Good morning. My name is Barbara Michel. I'm appearing on behalf of Mr. Vaden. Thank you for the opportunity to be here. May I ask how many minutes I have? You have 10 minutes. And then you have, you can reserve up to two. Or you can do whatever you want, but you just have to watch it. And just to be perfectly candid, I usually give people a minute in rebuttal no matter what, even if they use up all their time. OK, thank you. As the court well knows, I hope I don't repeat things that are obvious. I'm trying not to. But this is a case where every lawyer and every court that had the case before it missed a very important issue. And that is whether the five-year enhancement to Mr. Vaden's offense is supported by a jury verdict that meets the requirements of the California statutes, namely 667A and 1197.2C, requiring that his present offense have been committed with a deadly or dangerous weapon. And you would maintain that the issue was adequately exhausted, that the issue was, although not perfectly clearly adequately exhausted, because there was some mention in both the state court brief and in the district court brief of the problem with the jury's verdict not focusing on the dangerous weapon. Well, there is a problem with the jury verdict. And that is why I believe this enhancement must be stricken. But I believe the issue has been exhausted, because at every step of the way, Mr. Vaden said, I am contesting this five-year enhancement under 667A, and asking the court to look at it. So therefore, I mean 667A has been around for a long time. And the requirements for a five-year enhancement under that statute have been clear in California courts for a long time. But let me tell you what my ultimate problem was to get to the bottom of the line. Thank you. My own guess is it may well have been adequately exhausted, and that there really is an apprentice problem. I mean, there was at least an apprentice requirement with regard to this piece of the enhancement. And maybe even an apprentice problem. But why isn't it all harmless? But why isn't it harmless? Yeah. Because it was contested at trial. The knife was never presented. Nobody has any idea if we were talking about a two-inch knife, a bread knife, a steak knife, or some other kind of knife. I don't know why they didn't present it, but they didn't. The people who testified about the knife were all admitted drug addicts who were currently, I believe all three of them admitted they were currently using very serious drugs that affect one's mental stability. And Mr. Baden, I don't know if it's Baden or Baden, and Mr. Baden objected, I'm sorry, contested this himself in one of his, and you've got me right now because I can't remember where I saw it, but at some point he said, look, this was, there was a bread knife there. But in any event, it wasn't, the jury, it's not. So in other words, your contention would be that, but isn't it true that the prosecutor specifically told the jury that this was a dangerous weapon case, not a bodily injury case? Well, I can perhaps grab the prosecutor's argument in rebuttal, but the prosecutor was very vague about this particular issue. And the defense attorney got up and said, oh, come on, this is a simple, what the defense attorney kept saying was, look, this is a misdemeanor assault. Well, 245A1, I think, is. But isn't that foreclosed by the jury's verdict? You're not here to challenge the jury's verdict. You're only here to challenge the sentencing enhancement. That is correct. That's been found against you. I am here to challenge the enhancement, but the reason I'm doing that is because the jury verdict never said that he committed the act with a deadly or dangerous weapon. No, the verdict, that's correct. The verdict is not correct. But the prosecutor says, look, you don't have to worry about the bodily injury part of the statute, because this is a weapon case. This guy used a knife. And the prosecution has invited the jury to say, did he use a knife or didn't he use a knife, because that's the only thing that the prosecutor tells them. The prosecutor says, you don't have to worry about anything else in the statute. This is a knife case. Well, I believe that, thank you, I believe defense counsel contested that in her closing argument. And if the jury had believed counsel, then they would have acquitted your client, not convicted him. She was, counsel was, defense counsel was saying, look, this is nothing more than a misdemeanor assault. Right. In which case she's denying that there could have been a knife there. And we would have expected there to have been a less, right? Well, I don't think that's correct. I mean, when you put it that way, there's, because, I'm sorry. Is she conceding that there was a knife there? Well, my point being that the statute does not require the use of a knife. The statute requires the use of a deadly or dangerous weapon. That was the issue. But the question is this. Is there any chance that the jury found that there was force? What is the exact requirement? Force likely to produce. Causing great bodily injuries. Is there any, I mean, was there any injury? Was there any injury? Well, once again, with force likely to produce, you don't need an injury. All you need is force likely to produce. Is there any, is there any deal with the facts in the case where they could have found that? I believe that there was an altercation between my client and the man whose name I don't remember. So you're saying that no matter what the prosecutor said, we can't really tell. Because the jury could have found that it was a bread knife. And that it was really force likely to cause great bodily injury. Yes, that is, that is one of my main contentions, yes. Well, you need some contention at the bottom here. I mean, I'm willing to give you everything else. But at the end, you need to tell me why any of this mattered. Why any of that mattered? Why the fact, I mean, first of all, if he should have gotten a, he had a jury. He had a verdict. So it's really a question of interpreting the verdict. It's not that he didn't have a jury. It's a question of whether there is some ambiguity about the jury's verdict, right? Well, there is. I mean, that's one way of looking at it. Yes. But I would take it to the next step. I mean, there is an ambiguity about the verdict. And when you have an ambiguous verdict, you do not have a verdict saying, yes, he was, it was done with a deadly or dangerous weapon. You just, you don't have that. And then you can't go back and redo that verdict. You are stuck with that. Well, if that's true, is a parenting error subject to harmless error of this kind? I.e., if he should have had a jury verdict and didn't have one? I.e., I'm sorry. I'm having trouble hearing you. Is a parenting error subject to harmless error of this kind? I mean, let's suppose he hadn't had, if he hadn't had a jury at all, you couldn't turn, we couldn't turn around now and say, oh, but it was harmless, right? Right. So the question is whether he or he had a jury which decided something. And the question is, on your view, the cases are just no harmless error available? Can you find that this error was harmless, in other words? Yes. I don't think that you can find that the error was harmless. I think, first of all, first of all, it's a, I think it's a constitutional requirement that you, that any time, well, under Apprendi, yes, any time you enhance somebody's sentence. Well, but he had, he did have a jury. The question is, did the, is what the jury decided adequate, right? The jury did not decide the issue. Didn't the prosecutor file an amended information like specifically a legend and a knife just before the trial? I don't recall that, but it was a. I recollect, for the record also, the knife was in evidence. You said it wasn't in evidence? The knife was never presented into evidence. And even if the prosecutor filed an amended information alleging only the deadly, deadly, dangerous or deadly use, I'm sorry, use of a dangerous or deadly weapon or knife, that was not, that question was not presented unambiguously to the jury. So it doesn't really make any difference what the information says. In other words, what makes a difference is what the instructions were to the jury and what the jury verdicts. The California Court of Appeals decision certainly contemplates the use of a knife. They talk about Connie's testimony. I'm on page 4 of the California Court of Appeals decision. Connie saw a defendant retrieve a knife from his backpack. As the defendant was threatening Daniel with a knife to Daniel's chest or throat, Connie ran out the back door. Now, are those findings on the part of the California Court of Appeals unreasonable? I mean, we now have a court of appeals that's affirming a conviction on the basis that there was a use of a knife here. Yes. Well, once again, I mean, it goes back to the question of whether was there a use of a deadly or dangerous weapon, which is really different from a knife. It's a different question. And that question was not addressed in, I believe, in the court of appeals opinion. They just, everybody's talking about a knife. Nobody's talking about the requirements of the statute. Yes. Although the conversation certainly suggests that they believed it was a knife capable of cutting, because the defendant said, I'll cut your fool head off. Well, I mean, words, you know, everybody, if everybody's drunk, they can say a lot of crazy things. I noticed that I'm running out of time, and I want to reserve time for rebuttal. Okay. Thank you very much. Thank you. Good morning. Carlos Martinez from the California Attorney General's Office representing the Respondent Appealee. Mr. Baden had a long history of harassing these women. He broke into their home, produced a knife, woke up the boyfriend, showed the knife. He was arrested shortly afterwards by a police officer. The knife was described by the police officer as a large, kitchen-type knife that was poking out of the jacket. So it was poking out of the jacket. Was the knife introduced at trial? Yes. And I wanted to correct that point. It was definitely introduced at trial and presented to the jury. So my recollection was right then. I'm sorry, Your Honor? So my recollection was right. Okay. Based on these circumstances, even if appellant's claim is not forfeited, and even if appellant can survive the ADPA's very stringent standard, the reasonable juror standard. Well, she's surely right that this issue had to go to a jury and have a jury verdict, right? This was this particular issue was decided by a jury. That's not what I'm asking you. Her basic legal theory is right, that is, that this aspect of the enhancement, that is, the character of the current crime did have to go to a jury. Yes. As to whether it was a deadly weapon or a force. Oh, absolutely, Your Honor. That's absolutely true. Okay. And the jury did make that decision because the prosecutor specifically made the election. And also everybody seems to have read past and thought that the Petitioner was saying something else. He did, in fact, specifically say in each brief that there was an apprendee problem because the jury didn't decide which it was, and there's some coherence in that. There is an argument there, but the prosecutor made the election, and the prosecutor told the jury. All I'm getting to is that I seems to me the State really should have agreed that everything up to that point was right, and the only question here really is harmlessness. Well, what I did, Your Honor, was I was given a list of possible issues. And what I've done in the past is I've always given the Court a list of possible reasons why I should prevail. I think my strongest argument – Well, it would be nice if you had the right ones. I think my strongest argument is harmless error, Your Honor. Okay. So if this hadn't gone to a jury at all, you couldn't apply harmless error, right? Well, I don't think – if it didn't go to a jury, I couldn't claim harmlessness. The crime itself is specifically 245 of the penal code, California penal code, and it's defined as assault with a deadly weapon or by means of force likely to produce great bodily injury. That's not the crime. It's an enhancement on the crime. No, no. That is the crime. The 667A is the serious felony conviction. And perhaps this is why the 667A is the enhancement. It's the attempt murder. But if you apply the attempt murder, you have to have the underlying offense to be a serious felony also, right? That's correct. So that's the issue. That's correct, Your Honor. Okay. But that's why it has to be the – apparently it has to be the deadly weapon part of this and not the other part of this. That's correct, Your Honor. All right. So the jury was not, in fact, asked to decide that. Yes. Yes, they were, Your Honor. They were asked to find a defendant guilty of assault with a deadly weapon or by use of a weapon. Right. Or. So they weren't asked to decide which it was. Right. And they didn't decide which it was. They decided it or. They didn't. That's correct. But it would be harmless under Apprendi. Well, that's what I'm trying to get to. All right. So they – so why is what happened here any different than if it didn't go to the jury at all? I mean, something went to the jury, but, in fact, they were not asked to make the important choice. Something went to the jury. It wasn't just something. It was the state of the evidence. And under Brecht's standard, which is the only harmless error standard applicable in this particular case, because this is collateral review, we look at the state of the evidence. And there was no evidence of force likely to produce great bodily injury. But if the – suppose the evidence was exactly the same, but the jury – but the crime, underlying crime was somehow different, so the jury never had to decide anything about this. How is this different? Because they still didn't make the actual important – in other words, suppose the evidence was exactly the same, and you could look at it and say, look, they – you know, there's just no doubt that there was an assault with a deadly weapon. How is this different when the jury didn't have to make the actual important choice and never did? Well, I believe that the jury made the choice. Not the fact that this was not a great bodily injury, but it did make the choice. Now, 245 is a odd – I would say an odd statute. However, there was no evidence. And the only – only harmless error standard applicable in this particular case has to be Brecht. It can't be Chaffetz. But you're assuming that there is a harmless error standard available, and that's really what I'm questioning you on. Right. I'm asking you whether – if the important issue never went to the jury, and it never did, why is there any harmless error?   Why is there no structural error? Why isn't there structural error? Why isn't there structural error? Because the jury was never asked the key question, period. The U.S. Supreme Court has limited the number of types of situations that constitute structural error. Including denial of right to jury. But here, in this particular case, the jury made the determination. It found the defendant guilty of 245 under that statute. But expressly in the alternative. Expressly. It was in the alternative. But – but – So you're therefore asking us to apply harmless error to the jury trial question by saying that there is something about this case – and this is what I'm trying to get a handle on – that's different from the situation in which it didn't go to the jury at all, even though the jury did not decide the key question. I mean, at least there's no evidence, no direct evidence except inference harmless error. Inference, which I'll give you, is very strong. But I'm asking you whether it's sufficient. Yes, it is. And it's sufficient simply because we look at the facts of the particular case. But that's not what I'm asking. And I understand what you're saying, Your Honor. I'm saying that in the past, whenever this type of situation has occurred – But I've never seen this type of situation, have you? I have, but – In an instance in which the question was – was denial of right to jury? The Court regularly follows a harmless error correct standard. In a situation where the issue was denial of right to jury? Yes. No, not – not – Give me a hint.  All right. What situation are you talking about? Give me a hint. When we're talking about an interpretation of a particular statute that can be interpreted by two different ways, that can be – can be violated by two different ways, I have seen that happen. And in an issue – in a situation where the problem was whether the jury had to make a decision and didn't make it? Yes. Could you give me – I'd really like to have some sight, so if you could do that when you get back, that would really be helpful. I will. I will. Would you – would you like me to send it to – directly to the Court then? Yeah, as opposed to who? Yes. Okay. Very good. Thank you, Your Honor. Thank you. Ms. Pichelle, before you begin, was there a knife in evidence or wasn't there a knife in evidence? Well, you know, I don't have the record with me. I don't believe the knife was placed in evidence. If I'm wrong, I'm wrong. I'm looking at page 38 of your excerpts of record. I'm going to have to take a look at it. Don't pick it up unless you need to, because it is sharp. Have you ever seen that before? Yes, I have. When did you see it? This knife? I was threatened with this knife. On page 51 of your excerpt of record, there's a reference to peoples 2A, which is the knife that the officer testifies that he confiscated from the defendant in his backpack. Right. So there was a knife in evidence. There was a knife. There is also evidence of an altercation the night before involving a knife. And my recollection is that these references in the record are to the knife that was related to the altercation the night before. Well, the witnesses have identified it as the knife that was used on them. Well, I think, as I recall, the night before, the issue was, the complaint was that he had a knife and he was threatening either Susan or the other woman with it. The one on page 51 of the excerpts where they identify peoples 2A, they're talking to the police officer, and this is when he handcuffs him. So this is at the point at which he arrests him. But it doesn't appear to have been the knife. It may have been a knife that was used the night before, but that's not the context in which the officer is testifying as to Exhibit 2A. Your Honor, if you're – if I'm wrong, I'm wrong. But at this point, all I can tell you is that my recollection is – I mean, I know that there was an altercation the night before involving a knife, and I believe that the knife that they are referring to there is the knife that related to the night before and not to the morning of the offense. What about the question that I asked at the end? Do you have case law about a circumstance like this in which, rather than there being no jury verdict, there was a sort of ambiguous or somewhat – a jury verdict that required interpretation in an AEDPA situation? And what harmless error rule applies to that? Do you have any case law? Well, what that leads into what I was – I did come across two cases since the briefing. One came out yesterday from the Ninth Circuit. It's U.S. v. Hunt. And I would like to submit further briefing on this if the Court would like it. But basically, it says the amount or type of – I'm sorry, the defendant pled guilty – do you want me to read this, or shall I just – Why don't you give us the – you can give us the sites through the courtroom deputy. Thank you. Okay. And that involves – But these address the question I asked, i.e., a jury trial, a case in which the issue is denial of a jury trial and the question is harmless error? Oh, as opposed to structural error. Yes. Yes. Well, I think if you are denied your right to a jury trial, that's got to be structural error. But that's the question. He had a jury trial. Well, and a jury verdict. I mean, a jury – And he had a verdict. And the question is, what did the verdict mean in the circumstances? He had – I would say he had an incomplete verdict. The jury did not decide the question, the critical question of what instrument – of what manner of assault it was. So therefore, that's what I mean when I say he was denied the right to a jury trial. The jury did not decide the critical question. So I would say that's structural. And – Okay. Your time is up. Thank you. Yes. I have one more case that I just wanted to – Well, give us the – Thank you. Thank you very much. Thank you very much. Thank you to both counsel. The case turns out to be actually quite an interesting one. Madden v. Adams is submitted.
judges: Whelan, Berzon, Bybee